**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| TOMMY HILFIGER LICENSING LLC, CALVIN KLEIN TRADEMARK TRUST and CALVIN KLEIN, INC., | Case No. 22-cv-04718 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Tommy Hilfiger Licensing LLC, Calvin Klein Trademark Trust, and Calvin Klein, Inc. (collectively, "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on attached Schedule A (collectively, "Defendants") and allege as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II.   INTRODUCTION

3.      This action has been filed by Plaintiffs to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

the Internet.  Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.      Plaintiffs Tommy Hilfiger Licensing LLC and Calvin Klein, Inc. are wholly-owned subsidiaries of PVH Corporation.

**Plaintiff Tommy Hilfiger Licensing LLC**

5.      Plaintiff Tommy Hilfiger Licensing LLC ("Tommy Hilfiger"), along with its affiliated company Tommy Hilfiger U.S.A., Inc., designs, sources, distributes, sells, and markets throughout the United States, including Illinois, quality apparel, accessories and other products, all of which prominently display its famous, internationally-recognized and federally-registered trademarks (collectively, the "Tommy Hilfiger Branded Products").  Tommy Hilfiger Branded Products have become enormously popular and even iconic, driven by Tommy Hilfiger's arduous quality standards and innovative design.  Among the purchasing public, Tommy Hilfiger Branded Products are instantly recognizable as such.

6.      Tommy Hilfiger Branded Products have been continuously sold under the Tommy Hilfiger trademarks in the United States for many years.  Tommy Hilfiger Branded Products are distributed and sold to consumers through department stores, retail stores and authorized e-commerce sites throughout the United States and in Illinois, including through the official e-commerce tommy.com website launched in 2004.

7.      Tommy Hilfiger incorporates a variety of distinctive marks in the design of its various Tommy Hilfiger Branded Products.  As a result of this long-standing use, Tommy Hilfiger

3

owns common law trademark rights in its trademarks. Tommy Hilfiger has also registered its trademarks with the United States Patent and Trademark Office. Tommy Hilfiger Branded Products typically include at least one of the federally registered Tommy Hilfiger trademarks. Tommy Hilfiger uses its trademarks in connection with the marketing of its Tommy Hilfiger Branded Products, including the following marks, which are collectively referred to as the "Tommy Hilfiger Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 1,398,612 | TOMMY HILFIGER | For: clothing for men and women: namely, shirts, pants, jackets, sweaters, shorts, belts, vests, sport jackets, coats, rain coats, parkas in class 025. |
| 1,738,410 | TOMMY HILFIGER | For: clothing for men, namely, shirts, sweaters, pants, sweatshirts, shorts, sport jackets, parkas, bathing suits, vests in class 025.<br><br>For: retail clothing store services in class 042. |
| 1,833,391 | TOMMY HILFIGER | For: ties, socks, suspenders, hats, caps, suits and blazers in class 025. |
| 1,995,802 | TOMMY HILFIGER | For: deodorants and soaps for personal use in class 003.<br><br>For: articles of leather and imitation leather, namely, wallets, credit card cases, billfolds, umbrellas and travelling bags in class 018.<br><br>For: bathrobes, tuxedos, pajamas, underpants and undershirts in class 025. |
| 2,103,148 | TOMMY HILFIGER | For: eyewear, namely, eyeglasses, sunglasses and eyeglass frames and lenses |

| | | |
|---|---|---|
| | | and eyewear accessories, namely, cases and holders in class 009. |
| 2,162,940 | TOMMY HILFIGER | For: jewelry made of precious and non-precious metals and stones, namely, cuff- links, and bracelets in class 014.<br><br>For: footwear, namely, shoes, boots, sneakers, sandals and slippers in class 025. |
| 2,485,457 | TOMMY HILFIGER | For: jewelry, namely, necklaces, and rings in class 014.<br><br>For: pillows in class 020. |
| 2,617,339 | TOMMY HILFIGER | For: watches in class 014. |
| 2,389,024 | TOMMY | For: clothing for men, women and children, namely, t-shirts, sweatshirts, sweaters, jackets, coats, jeans, and caps in class 025. |
| 2,475,142 | TOMMY | For: full line of apparel and headwear in class 025. |
| 2,772,857 | TOMMY | For: handbags in class 018. |
| 3,164,348 | HILFIGER | For: clothing, namely, shirts, t-shirts, sweatshirts, sweaters, shorts, sweatpants, blazers, pants, jeans, suits, vests, jackets, coats, parkas, ponchos, swimwear, swim trunks, rainwear, wind resistant jackets, underwear, belts, hats, caps, scarves, boxer shorts, shoes, boots, sneakers, sandals, and gloves in class 025. |
| 2,899,046 | HILFIGER DENIM | For: clothing, namely, shirts, t-shirts, sweatshirts, tank tops, sweaters, turtle-necks, shorts, sweatpants, blazers, pants, jeans, skirts, suits, overalls, dresses, vests, jackets, coats, parkas, ponchos, swimwear, bikinis, swim trunks, overcoats, belts, hats, wool |

| | | |
|---|---|---|
| | | hats, caps, scarves, and gloves in class 025. |
| 2,563,735 | TH | For: Jewelry and watches in class 014. |
| 2,612,455 | TH | For: full line of apparel in class 025. |
| 2,697,281 | TH | For: Full line of handbags, backpacks, and cosmetic bags sold empty in class 018. |
| 3,084,022 | TH | For: Eyeglasses, sunglasses and frames for eyeglasses in class 009. |
| 1,460,988 |  | For: clothing for men and women, namely, shirts, pants, jackets, sweaters, shorts, belts, vests, sport jackets, coats, rain coats, parkas in class 025. |
| 1,727,740 |  | For: clothing for men namely, shirts, sweaters, sportcoats, pants, sweatshirts, shorts, sport jackets, raincoats, parkas, overcoats, bathing suits, vests, turtlenecks; clothing for boys, namely, shirts, sweaters, sportcoats, pants, sweatshirts, shorts, sport jackets, parkas, bathing suits, vests in class 025.<br><br>For: retail clothing store services in class 042. |
| 1,808,520 |  | For: socks, ties, hats, caps and blazers in class 025. |

| | | |
|---|---|---|
| 2,030,406 |  | For: cologne, eau de toilette, shaving lotion, deodorant and soap for personal use in 003.<br><br>For: articles of leather and imitation leather, namely wallets, credit card cases, billfolds, umbrellas and travelling bags in class 018.<br><br>For: bathrobes, tuxedos, pajamas, underpants, undershirts and suspenders in class 025. |
| 2,213,511 |  | For: footwear, namely, shoes, boots, sneakers, sandals and slippers in class 025. |
| 2,063,504 |  | For: eyewear, namely, eyeglasses, sunglasses and eyeglass frames and lenses and eyewear accessories, namely, cases and holders in class 009. |
| 4,745,262 | TOMMY ■ HILFIGER | For: soaps; perfumery; colognes; toilet water; perfumes, fragrances for personal use; lotions for skin care; antiperspirants; deodorants for personal use in 003.<br><br>For: optical goods, namely, spectacles, spectacle glasses, sunglasses, eyeglass cases and sunglasses cases, carrying cases and holders for portable computers and mobile phones, magnetic coded cards, namely, gift cards in class 009.<br><br>For: jewelry, namely, bracelets, necklaces, rings, earrings, cufflinks, horological and chronometric instruments, namely, watches, wrist watches, straps for wrist watches in class 014.<br><br>For: all purpose sports bags and |

| | | athletic bags; overnight bags; book bags; tote bags; travelling bags; backpacks; handbags; luggage; suitcases; purses; briefcases; travel bags; duffel bags and beach bags, school bags; garment bags for travel; overnight cases, clutch bags; travel kit bags sold empty; suitcases with wheels attached; billfolds; wallets, pocket wallets, change purses, coin purses, credit card cases of leather; leather credit card wallets; name card cases; cosmetic cases sold empty; leather cases for cosmetics sold empty; umbrellas in class 018.

For: fabrics and textile goods, namely, household linen, bed linen, bath linen, bed sheets, pillow shams, pillow cases, bed blankets, comforters, quilts, bedspreads, bed covers, duvet covers, duvets, dust ruffles, mattress covers, towels, bath towels, beach towels, face cloths, shower curtains, handkerchiefs in class 024.

For: clothing for men, women and children and infants, namely, shirts, golf shirts, t-shirts, polo shirts, knit tops, woven tops, sweatshirts, tank tops, sweaters, blouses, jerseys, turtlenecks, shorts, sweatpants, warm-up suits, blazers, sport coats, trousers, jeans, skirts, dresses, suits, overalls, jumpers, vests, jackets, coats, raincoats, parkas, ponchos, swimwear, bikinis, swim trunks, overcoats, rainwear, wind resistant jackets, sleepwear, pajamas, bathrobes, underwear, lingerie, boxer shorts, belts made of leather, ties; headgear, namely, hats, wool hats, caps, visors, headbands, ear muffs; scarves, shawls, cloth bibs; footwear, gym shoes, sneakers, socks, hosiery, shoes, boots, beach shoes, sandals, slippers, gloves, suspenders; layettes in class 025. |
|---|---|---|

| | | |
|---|---|---|
| | | For: retail department store services, online retail department store services, online retail outlet services featuring perfumery, cosmetics, clothing, footwear, headgear, textile goods, goods made of leather or imitation of leather, bags, eyewear, jewellery, watches and horological and chronometric instruments, household accessories, and home items in class 035. |
| 3,264,718 | TH | For: clothing for men, women and children, namely, shirts, golf shirts, T-shirts, sweatshirts, tank tops, sweaters, jeans, vests, jackets, coats, parkas, underwear, scarves in class 025. |
| 3,264,715 | TH | For: handbags in class 018. |

8.     The above U.S. registrations for the Tommy Hilfiger Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Tommy Hilfiger Trademarks constitute *prima facie* evidence of their validity and of Tommy Hilfiger's exclusive right to use the Tommy Hilfiger Trademarks pursuant to 15

U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Tommy Hilfiger Trademarks are attached hereto as **Exhibit 1**.

9.      The Tommy Hilfiger Trademarks are exclusive to Tommy Hilfiger and are displayed extensively on Tommy Hilfiger Branded Products and in Tommy Hilfiger's marketing and promotional materials. Tommy Hilfiger Branded Products have long been among the most popular and recognizable of their kind, and have been extensively promoted and advertised at great expense. In fact, Tommy Hilfiger has expended millions of dollars annually in advertising, promoting and marketing featuring the Tommy Hilfiger Trademarks. Because of these and other factors, the Tommy Hilfiger Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

10.     The Tommy Hilfiger Trademarks are distinctive when applied to the Tommy Hilfiger Branded Products, signifying to the purchaser that the products come from Tommy Hilfiger and are manufactured to Tommy Hilfiger's quality standards. As such, the goodwill associated with the Tommy Hilfiger Trademarks is of incalculable and inestimable value to Tommy Hilfiger.

11.     In recent years, annual sales of products bearing the Tommy Hilfiger Trademarks have totaled in the hundreds of millions of dollars within the United States. Since at least as early as 2004, Tommy Hilfiger has operated a website where it promotes and sells genuine Tommy Hilfiger Branded Products at tommy.com. Sales of Tommy Hilfiger Branded Products via the tommy.com website represent a significant portion of Tommy Hilfiger's business. The tommy.com website features proprietary content, images and designs exclusive to the Tommy Hilfiger brand.

12.     Tommy Hilfiger has expended substantial time, money and other resources developing, advertising and otherwise promoting the Tommy Hilfiger Trademarks.  As a result of these efforts, members of the consuming public readily identify merchandise bearing or sold under the Tommy Hilfiger Trademarks as being quality Tommy Hilfiger Branded Products.

**Plaintiffs Calvin Klein Trademark Trust and Calvin Klein, Inc.**

13.     Calvin Klein Trademark Trust ("CKTT") is a business trust organized and existing under the laws of Delaware with an address, c/o Calvin Klein, Inc., at 205 West 39th Street, New York, New York 10018.  CKTT's sole trustee, Wilmington Trust Company, is a Delaware corporation with a business address at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890.  CKTT is the record owner of the CALVIN KLEIN and CK trademarks for underwear, watches, and various other products (among other marks) in the United States.

14.     Calvin Klein, Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 205 West 39th Street, New York, New York 10018.  Calvin Klein, Inc. is the beneficial owner of the trademarks owned by CKTT, including trademarks for watches and various other products (among other marks), in the United States.

15.     Calvin Klein is one of the leading fashion design and marketing companies in the world.  It designs and markets women's and men's designer apparel and a range of other products that are manufactured and marketed through an extensive network of licensing agreements and other arrangements worldwide.  Brands/lifestyles include Calvin Klein, cK Calvin Klein, Calvin Klein Jeans, Calvin Klein Performance and Calvin Klein Underwear, among others.  Product lines under the various Calvin Klein brands include women's dresses and suits, men's dress furnishings

and tailored clothing, men's and women's sportswear and performance apparel, golf apparel, jeanswear, underwear, fragrances, eyewear, women's performance apparel, hosiery, socks, footwear, swimwear, jewelry, watches, outerwear, handbags, small leather goods, and home furnishings, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CALVIN KLEIN (collectively, the "Calvin Klein Products"). Calvin Klein Products have become enormously popular and even iconic, driven by Calvin Klein's arduous quality standards and innovative design. Among the purchasing public, genuine Calvin Klein Products are instantly recognizable as such. In the United States and around the world, the Calvin Klein brand has come to symbolize high quality and prestige. Further, Calvin Klein Products are among the most recognizable in the world.

16.     Calvin Klein Products are distributed and sold to consumers through department stores including, but not limited to, Nordstrom and Macy's, throughout the United States and in Illinois, and through the official e-commerce calvinklein.com website which was launched in August 2008.

17.     Calvin Klein has continuously sold Calvin Klein Products under the Calvin Klein trademarks in the United States for many years. Calvin Klein incorporates a variety of distinctive marks in the design of its various Calvin Klein Products. As a result of its long-standing use, Calvin Klein owns common law trademark rights in its trademarks. Calvin Klein has also registered its trademarks with the United States Patent and Trademark Office. Calvin Klein Products typically include at least one of the federally registered Calvin Klein trademarks. Often the Calvin Klein mark is displayed in more than one location on a single product (*e.g.*, interior label, lining, or external name plate). Calvin Klein uses its trademarks in connection with the

marketing of its Calvin Klein Products, including the following marks, which are collectively referred to as the "CALVIN KLEIN Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,993,879 | CALVIN KLEIN | For: watches and jewelry in class 014. |
| 1,418,226 | CALVIN KLEIN | For: eyeglass frames and sunglasses in class 009. |
| 2,069,292 | CK CALVIN KLEIN JEANS | For: women's, men's, boys and girls wearing apparel, namely, shirts, T-shirts, tank tops, blouses, jackets, sport coats, pants, dresses, shorts, walking shorts, skirts, jeans, gloves, suits, blazers, clothing belts, socks, tights, hats; outerwear, namely, jackets, coats, vests, sweaters, shearling, shearling jackets, rain wear, rain coats, capes, ponchos, warm-up suits, scarves, shawls, and clothing ties in class 025.<br><br>For: advertising agencies and developing promotional campaigns for businesses in class 035.<br><br>For: design services for others in the field of clothing and retail boutique store services in class 042. |
| 2,314,144 | CK | For: jewelry and watches in class 014. |
| 1,932,699 | Calvin Klein | For: briefs, boxer shorts, athletic shirts and bottoms, t-shirts and tank tops, undershirts, underpants and undershirts, robes, knitted and woven sleepwear, namely sleep shirts, pajama tops, pajama bottoms, smoking jackets, knitted and woven loungewear, including lounging pants and tops, and lounge jackets in class 025. |
| 1,819,048 | Calvin Klein | For: men's wearing apparel; namely, suits, sports jackets; blazers, dinner jackets, pants, jeans, outer coats, raincoats, shirts, vests, sweaters, ties, belts; women's wearing apparel; namely, jeans, and gloves; |

| | | |
|---|---|---|
| | | children's wearing apparel; namely, dresses, skirts, jeans and shirts in class 025. |
| 1,633,261 | Calvin Klein | For: men's and boys' underwear and men's and boys' shorts; women's and girls' underwear (including brassieres and underpants); women's nightgowns in class 025. |
| 1,604,663 | Calvin Klein | For: women's handbags, wallets, billfolds, french purses, briefcase type leather portfolios and briefcase type leather organizer, key case, key fobs, change purses, luggage, vanity cases, overnight cases, duffle bags, suit bags, tote bags, trunks, briefcases, attaché cases and suit cases in class 018. |
| 2,483,764 | cK | For: eyeglass frames, sunglasses in class 009.<br><br>For: clothing caps and hats in class 025.<br><br>For: advertising agencies and developing promotional campaigns for businesses in class 035.<br><br>For design for others in the field of clothing and retail clothing boutiques in class 042. |
| 2,454,886 | cK | For: eyeglass frames, sunglasses in class 009.<br><br>For: watches and clocks in class 014.<br><br>For: clothing, footwear and headwear for women, men, boys and girls, namely, jump suits, shirts, blouses, jackets, bathing suits, pants, belts, shorts, warm-up suits, sweatpants and sweatshirts, walking shorts, jeans, knitted tops, stockings, tights, hats, caps, coats, outer coats, sweater, skirts, coats, t-shirts, beach and swimming cover-ups, tank tops, camisoles; tennis and golf apparel, namely, dresses, tops, skirts, pants, and shorts; footwear, namely, shoes, active |

| | | |
|---|---|---|
| | | sport shoes, sneakers, boots, slippers; blazers, pants, socks in class 025.<br><br>For: advertising agencies and developing promotional campaigns for businesses in class 035.<br><br>For: design for others in the field of clothing and retail clothing boutiques in class 042. |
| 2,080,100 | cK | For: women's, men's, boys and girls wearing apparel, namely, shirts, t-shirts, jump suits, tank tops, blouses, jackets, bathing suits, beach and swimming cover-ups, pants, dresses, shorts, walking shorts, skirts, jeans, gloves, sports jackets, blazers, belts, socks, stockings, tights, hats, outerwear, namely jackets, coats, sweaters, rainwear, raincoats, capes, ponchos, shoes, boots, slippers, tennis and golf dresses, tennis and golf shorts, warm-up suits, scarves, shawls in class 025. |
| 2,076,377 | cK | For: handbags, wallets, key cases, change purses, cosmetic bags and pouches sold empty, briefcase-type portfolios, suit bags, trunks for traveling, suitcases, umbrellas, billfolds, duffle bags, tote bags, briefcases and attaché cases, luggage, overnight cases, toilet kits sold empty, credit card holders, business card holders, eyeglass cases made from leather or imitation thereof in class 018. |
| 2,074,471 | cK | For: men's underwear, sleepwear and loungewear products, namely briefs, boxer shorts, athletic shirts and bottoms, t-shirts and tank tops, undershirts, underpants and undershirts, robes, knitted and woven sleepwear, namely sleep shirts, pajama tops, pajama bottoms, breakfast jackets, smoking jackets, bed jackets and cover-ups, knitted and woven loungewear, including lounging pants and tops, and |

15

| | | |
|---|---|---|
| | | lounge jackets; boy's underwear, namely briefs and boxer shorts in class 025. |
| 2,064,064 |  | For: women's and girl's intimate apparel, sleepwear and loungewear, bodywear, namely foundations, bras, girdles, garter belts, one piece bra and girdle, corselettes, body stockings, control briefs, control hipsters, control bikinis, bra slips, bra top camisoles, waist cinchers, bustiers, merry widows, camisettes, leotards and unitards, daywear, namely culottes, bikinis, hipsters, briefs, slips, blouse-slips, camisole-slips, chemise slips, culotte slips, evening slips, maternity slips, panty slips, princess slips, shadow panel slips, strapless slips, suite slips, tailored slips, half-slips, petti-slips, bra-slips, chemises, teddies, camisoles, bra top camisoles, bralettes, tap pants and petti-pants, daywear, loungewear, sleepwear and bodywear, namely nightgowns, toga nightgowns, night shirts, pajamas, shortie pajamas, baby doll pajamas, T-shirt pajamas, French maid sleepers, harem pajamas, hostess culottes, lounging pajamas, rompers, sleep shorts, peignoirs, bed jackets, caftans, jumpsuits, teddies, bathrobes, dressing gowns, kimonos, housecoats, beach togas, beach wrap-ups, breakfast coats, brunch coats, hooded bathrobes, dusters, hostess robes, kabuki robes, lounging robes and monk's robes, bra tops, crop tops and leggings, excluding women's hosiery in class 025. |
| 2,192,526 |  | For: watches, excluding (14k and 18k gold jewelry) in class 014. |
| 2,144,299 |  | For: eyeglass frames and sunglasses in class 009. |

| | | |
|---|---|---|
| 2,142,329 | CK Calvin Klein | For: handbags, wallets, keycases, change purses, cosmetic cases sold empty, briefcase-type portfolios, suit bags, luggage trunks, suitcases, umbrellas, billfolds, duffelbags, totebags, briefcases and attaché cases, luggage and overnight cases in class 018. |
| 1,951,987 | CK Calvin Klein | For: handbags, wallets, key cases, change purses, cosmetic bags and pouches sold empty, briefcase-type portfolios, suit bags trunks for traveling, suitcases, umbrellas, billfolds, duffle bags, tote bags, briefcases and attaché cases, luggage, overnight cases in class 018. |
| 1,810,850 | CK Calvin Klein | For: women's, men's, boys and girls wearing apparel; namely, shirts, blouses, jackets, bathing suits, beach and swimming cover-ups, pants, dresses, shorts, skirts, jeans, gloves, suits, sports jackets, belts, socks, underwear, stockings, tights, hats, outerwear; namely, coats and vests, sweaters, T-shirts, rainwear, raincoats, tank tops, shoes, boots, slippers, blazers, bras, nightgowns, robes, scarves and shawls in class 025. |

18.   The above U.S. registrations for the CALVIN KLEIN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the CALVIN KLEIN Trademarks constitute *prima facie* evidence of their validity and of Calvin Klein's exclusive right to use the CALVIN KLEIN Trademarks pursuant to 15 U.S.C. § 1057(b).  The CALVIN KLEIN Trademarks have been used exclusively and continuously by Calvin Klein, some since at least as early as 1968, and have never been abandoned.  True and correct copies of the United States Registration Certificates for the above-listed CALVIN KLEIN Trademarks are attached hereto as **Exhibit 2**.

19. Calvin Klein has built substantial goodwill in the CALVIN KLEIN Trademarks. As a result, the CALVIN KLEIN Trademarks are both famous marks and valuable assets.

20. The CALVIN KLEIN Trademarks are exclusive to the Calvin Klein brand, and are displayed extensively on Calvin Klein Products and in Calvin Klein's marketing and promotional materials. Calvin Klein Products have long been among the most popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Calvin Klein has expended millions of dollars annually in advertising, promoting and marketing featuring the CALVIN KLEIN Trademarks. Calvin Klein Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Calvin Klein augments this unsolicited media coverage with extensive paid advertising featuring internationally-known celebrities, including Mark Wahlberg, Kim Kardashian West, Justin Bieber, Kendall Jenner, and Eva Mendes in upscale, luxury magazines worldwide, such as *Elle* and *Vogue*. Because of these and other factors, the Calvin Klein name and the CALVIN KLEIN Trademarks have become famous throughout the United States.

21. The CALVIN KLEIN Trademarks are distinctive when applied to the Calvin Klein Products, signifying to the purchaser that the products come from Calvin Klein and are manufactured to Calvin Klein's quality standards. Whether Calvin Klein manufactures the products itself or licenses others to do so, Calvin Klein has ensured that products bearing its trademarks are manufactured to the highest quality standards. The CALVIN KLEIN Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the CALVIN KLEIN Trademarks is of incalculable and inestimable value to Calvin Klein.

22.     Since at least as early as 2008, Calvin Klein has operated a website at calvinklein.com where it promotes and sells genuine Calvin Klein Products.  The calvinklein.com website features proprietary content, images and designs exclusive to Calvin Klein.

23.     Calvin Klein has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the CALVIN KLEIN Trademarks.  As a result, products bearing the CALVIN KLEIN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Calvin Klein.  Calvin Klein is a multi-billion-dollar operation, and Calvin Klein Products have become among the most popular of their kind in the world.

24.     The TOMMY HILFIGER Trademarks and CALVIN KLEIN Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."

25.     The Tommy Hilfiger Branded Products and Calvin Klein Products are collectively referred to herein as "Plaintiffs' Products."

**The Defendants**

26.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

27.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics

used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

28. The success of Plaintiffs' brands has resulted in significant counterfeiting of Plaintiffs' Trademarks. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified numerous fully interactive e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Etsy, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 3**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id*. Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id*.

20

29.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.  **Exhibit 5** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 5** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."  **Exhibit 4** at 186-187.

30.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

31.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce

stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and design elements that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants to use any of Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

32. Many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiffs' Products. Other e-commerce stores operating under Seller Aliases omit using Plaintiffs' Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiffs' Products.

33. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

34. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like

Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

35.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

36.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

37.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

38.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

39.    Defendants' unauthorized use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

40.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

41.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  Plaintiffs' Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiffs' Products offered, sold or marketed under Plaintiffs' Trademarks.

42.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

43.     Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks. Plaintiffs' United States Registrations for Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect.   On information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks.   Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

44.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill in the well-known Plaintiffs' Trademarks.

46.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

47.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

48.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

49. By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

50. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

51. Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of their respective brands.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or

not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the Plaintiffs' Trademarks;

c.   committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.   further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

e.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, at Plaintiffs' choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiffs, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap") shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiffs' selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Etsy, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiffs' Trademarks;

4) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks;

6) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 2nd day of September 2022.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law

*Counsel for Plaintiffs Tommy Hilfiger Licensing LLC, Calvin Klein Trademark Trust and Calvin Klein, Inc.*